IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

KATHRYN HAEUPTLE                    )
                                    )
v.                                  )          No. 3:20-cv-0284
                                    )
ANDREW M. SAUL                      )
Commissioner of Social Security     )


To:    **The Honorable Eli J. Richardson, District Judge**


## REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain

judicial review of the final decision of the Social Security Administration ("Commissioner")

denying Plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Social

Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the

administrative record (Docket No. 19), to which Defendant has filed a response. (Docket

No. 25.) Plaintiff has also filed a reply to Defendant's response. (Docket No. 26.)[1] This matter

has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and

a report and recommendation. (Docket No. 4.)

---

[1] It has not escaped the Court's attention that Plaintiff's motion was not filed within
28 days of the order entered August 21, 2020, as required by the order (Docket No. 18), or that
Plaintiff's reply brief was filed more than seven days after Defendant's response, in violation of
Local Rule 7.01(a)(4), both without any request for an extension of time or other
acknowledgement of the tardy filings. This is far from the first time counsel of record, Peter
Skeie, has flouted the rules of this Court. Indeed, Mr. Skeie has been rebuked by this Court for
his unfortunate habit of disregarding orders in other cases. Although the Court will overlook
Mr. Skeie's inattention here, the Court cannot allow an attorney to simply take action on his
timeline while expecting other federal court practitioners to adhere to court-ordered schedules.
Mr. Skeie is therefore cautioned that his continued indifference to court-imposed deadlines will
be increasingly consequential.

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion for judgment on the administrative record (Docket No. 19) be **DENIED**.

## I. INTRODUCTION

Plaintiff initially filed an application for DIB on July 15, 2015, in which she asserted that, as of the alleged onset date of January 1, 2014, she was unable to work due to depression and generalized anxiety disorder. (*See* Transcript of the Administrative Record (Docket No. 17) at 292, 296).[2] On August 11, 2015, Plaintiff filed an application for supplemental security income ("SSI") under Title XVI of the Act. (AR 292.) On July 26, 2017, the presiding administrative law judge ("ALJ"), Brian Dougherty, issued a "partially favorable" decision in which he concluded that Plaintiff was disabled from January 1, 2014 through August 1, 2015 – and therefore entitled to benefits during that time period – but that Plaintiff's disability ended on August 2, 2015 based on evidence that her work activity yielded earnings above the level of substantial gainful activity. (AR 288, 292-303.)

On June 25, 2018, Plaintiff filed the application for DIB currently at issue, in which she asserted that she was unable to work, as of the new alleged onset date of March 8, 2018, due to "systemic disease," brain trauma, seizures, knee problems, depression, anxiety, and panic attacks. (AR 326-27.) Plaintiff's application was denied initially and upon reconsideration. (AR 326, 348.) Pursuant to her request for a hearing before an ALJ, Plaintiff appeared with counsel and testified at a hearing before ALJ Renee S. Andres-Turner on September 16, 2019. (AR 244.) On November 26, 2019, the ALJ denied the claim. (AR 225-27.) The Appeals Council

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

2

denied Plaintiff's request for review of the ALJ's decision on February 7, 2020 (AR 1-4), thereby making the ALJ's decision the final decision of the Commissioner. Plaintiff thereafter timely commenced this civil action and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

As part of the decision, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2021.

2. The claimant has not engaged in substantial gainful activity since March 8, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease, adjustment disorder, left knee chondromalacia, arthralgias, and posttraumatic stress disorder ("PTSD") (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry twenty pounds occasionally and ten pounds frequently; can stand and/or walk for six hours in an eight-hour workday; can sit for six hours in an eight-hour workday; can frequently balance; can occasionally stoop, kneel, crouch, crawl, and climb; should avoid concentrated exposure to extreme temperatures and hazards; can understand, remember, and carry our simple and detailed instructions; can have occasional interaction with coworkers and supervisors, no interaction with the public; and can adapt to routine changes in the workplace.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on November 16, 1980 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding

3

that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a)

11. The claimant has not been under a disability, as defined in the Social Security Act, at any time from March 8, 2018, through the date of this decision (20 CFR 404.1520(g)).

(AR 231-39.)

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence; and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 551 (6th Cir. 2020) (internal citations omitted). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Put another way, the ALJ's decision must be affirmed if his or her "findings and inferences are reasonably drawn from the record or

4

supported by substantial evidence even if that evidence could support a contrary decision." *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id.* First, if the claimant is engaged in substantial gainful activity, she is not disabled. *Id.* Second, the claimant is not disabled if she does not have a severe medically determinable impairment that meets the 12-month durational requirements. *Id.* Third, the claimant is presumed disabled if she suffers from a listed impairment, or its equivalent, for the proper duration. *Id.* Fourth, the claimant is not disabled if, based on her residual functional capacity ("RFC"), she can perform past relevant work. *Id.* Fifth, if the claimant can adjust to other work based on her RFC, age, education, and work experience, she is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the Commissioner at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Jones v. Berryhill*, 392 F. Supp. 3d 831, 843 (M.D. Tenn. 2019) (citing *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (citing *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

5

**B. The ALJ's Five-Step Evaluation of Plaintiff**

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ determined that Plaintiff's RFC allowed her to perform a range of work with express limitations to account for her severe impairments, and that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform (AR 231-39.)

**C. Plaintiff's Assertions of Error**

Plaintiff sets forth several assertions of error in her brief that involve overlapping issues. For the sake of clarity, the Court will condense these into two assertions of error: (1) that the ALJ erroneously concluded that drug abuse was a "driving factor" behind Plaintiff's mental issues; and (2) that the ALJ improperly rejected a treating psychologist's opinion. (Docket No. 20 at 4-11.) Based on these alleged errors, Plaintiff requests that the Commissioner's decision be remanded for additional proceedings. (*Id*. at 12.)

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-*

6

*Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The Court addresses Plaintiff's assertions of error below.

### 1. The ALJ's Discussion of Plaintiff's Mental Issues.

Plaintiff's initial assertion of error involves the narrow issue of whether the ALJ overly emphasized evidence in the administrative record documenting Plaintiff's drug use. Plaintiff claims that the ALJ erroneously relied on such evidence in lieu of her actual impairment: an "inability to regulate her emotions." (Docket No. 20 at 4.) Plaintiff also blames the ALJ for failing to follow instructions for evaluating drug and alcohol abuse set forth in the Commissioner's Program Operations Manual System ("POMS"), which is a document used by Social Security employees to process claims for benefits. (*Id.* at 9.)

Although not worded as such, Plaintiff's argument primarily challenges the ALJ's finding that Plaintiff's allegations regarding the severity of her symptoms were "not entirely consistent" with the evidence of record. (AR 234.) A claimant's allegation that she suffers from disabling symptoms triggers a duty for the ALJ to evaluate the symptoms pursuant to the framework delineated in Social Security Ruling ("SSR") 16-3p, which requires the ALJ to consider a claimant's "statements about the intensity, persistence, and limiting effects of the symptoms" and "evaluate whether the statements are consistent with objective medical evidence and other

evidence." 2017 WL 5180304, at *6 (October 25, 2017).[3] The ALJ's finding as to the consistency of a claimant's allegations must be affirmed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

Despite Plaintiff's assertion that the ALJ's ultimate decision was "clearly driven" by evidence of drug use (Docket No. 20 at 4), the ALJ set forth various reasons for concluding that Plaintiff's allegations were inconsistent with the evidence of record. For example, while Plaintiff testified that she experiences debilitating knee pain that impedes her ability to walk and prevents her from sleeping (AR 258, 274), the ALJ highlighted the normal physical examination findings and mild imaging results repeatedly documented by her providers. (AR 234-35.) Such evidence included unremarkable knee x-ray findings, normal shoulder x-ray findings, and notations from office visits consistently indicating a normal range of motion, normal flexion, normal strength, and a normal gait and station. (AR 234-35.) The ALJ also contrasted Plaintiff's testimony that she had experienced disabling symptoms in her shoulders and back since at least 2015 (AR 259, 273-74) with ALJ Dougherty's finding in the initial administrative opinion – issued on July 26, 2017 – that Plaintiff did not suffer from any "severe" physical impairment (AR 296, 303), meaning that Plaintiff's physical symptoms caused "no more than a minimal effect on [her] ability to work." SSR 85-28, 1985 WL 56856, at *3 (January 1, 1985).[4] Such evidence weighs

---

[3] The precursor to SSR 16-3p, SSR 96-7p, required the ALJ to make a "credibility" determination based on a claimant's statements about the limiting effects of her alleged symptoms. 1996 WL 374186, at *3 (July 2, 1996). The Commissioner removed any reference to "credibility" in SSR 16-3p, although there is no substantive change in the ALJ's analysis and nothing to suggest that case law pertaining to credibility evaluations under SSR 96-7p has been abrogated. *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" only to "clarify that subjective symptom evaluation is not an examination of an individual's character").

[4] Pursuant to Sixth Circuit case law and ensuing Acquiescence Rulings issued by the Commissioner, an ALJ reviewing a claimant's subsequent application for disability benefits is

8

against Plaintiff's claims of disabling pain. *See Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 713 (6th Cir. 1988) (noting that "mildly" degenerative back and leg conditions were "not so severe as to be reasonably expected to cause disabling pain").

The ALJ also discussed how the administrative record did not demonstrate "ongoing objective clinical manifestations of a significant mental pathology." (AR 235.) The ALJ noted normal findings with respect to memory, attention, and concentration, as well as other evidence indicative of "normal psychomotor activity." (AR 235.) And despite Plaintiff's portrayal of herself as a "poorly controlled emotional rollercoaster" (Docket No. 20 at 6), the ALJ emphasized office visits during which Plaintiff's mood was "euthymic/within normal limits." (AR 235.) The ALJ's reliance on these specific records and accompanying findings bolsters her decision to discount the veracity of Plaintiff's allegations of disabling symptoms. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (affirming credibility finding where the ALJ "carefully parses all of the medical records and accords them fair weight").

Notwithstanding such discussion, Plaintiff accuses the ALJ of "entirely ignor[ing]" both Plaintiff's consistent compliance with prescription regimens and the absence of any reports of drug abuse in the medical records. (Docket No. 20 at 7.) However, the Sixth Circuit has previously emphasized the difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Delgado v. Commissioner of Soc. Sec.*, 30 F. App'x 542, 547-48 (6th Cir. 2002). Moreover, Plaintiff's compliance with medication treatment – which, as

---

"bound by the prior ALJ's RFC finding unless there is new and material evidence of a change (improvement) in the claimant's medical condition or a relevant change in the law." *Ford v. Berryhill*, No. 5:16-CV-00115-LLK, 2017 WL 2531588, at *1 (W.D. Ky. June 9, 2017). The ALJ in the instant matter declined to accept ALJ Dougherty's findings "in their entirety" based on her determination that both a revision in relevant regulations and new and material evidence necessitated a modification of Plaintiff's RFC. (AR 229.) Plaintiff does not challenge this finding.

9

discussed below, is not entirely consistent – is not sufficient to overcome the ALJ's conclusions with respect to the credibility of her allegations. *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014) ("Merely marshalling evidence … is insufficient; to prevail on appeal, [Plaintiff] must demonstrate that the ALJ's determination that [she] was not disabled is not supported by substantial evidence.")

Here, the ALJ appropriately cited records documenting an emergency room visit at Vanderbilt University Medical Center ("VUMC") from March 2019 during which Plaintiff exhibited "marked hostility" towards an attending physician who refused to prescribe narcotic medication. (AR 236.) Such conduct, coupled with a separate notation indicating that Plaintiff previously called a VUMC provider and became similarly hostile when she was refused narcotic medication (AR 1029), suggests a pattern of drug-seeking behavior that other courts have deemed supportive of an ALJ's adverse credibility determination. *See Jackson v. Comm'r of Soc. Sec.*, No. 1:14-cv-628, 2015 WL 4611472, at *7 (W.D. Mich. July 31, 2015) (collecting cases). The attending VUMC physician also referenced Plaintiff's "spotty compliance" with recommendations from other providers (AR 1029), which similarly supports the ALJ's findings. *See Robertson v. Colvin*, No. 4:14-cv-35, 2015 WL 5022145, at *6 (E.D. Tenn. Aug. 24, 2015) ("An ALJ may consider noncompliance with treatment as a credibility factor."). The record additionally contains a notation from the attending physician indicating that Plaintiff had stopped taking all of her medications several months ago, and that she "seem[ed] to not be forthcoming about the extent of her substance use." (AR 1029.) This, too, lends support to the ALJ's negative credibility inference. *See Anderson v. Barnhart,* 344 F.3d 809, 815 (8th Cir. 2003) ("A claimant's misuse of medications is a valid factor in an ALJ's credibility determinations").

10

Plaintiff attempts to overcome such evidence by faulting the ALJ for failing to ask her about the March 2019 emergency room note during the administrative hearing. Plaintiff claims that had the ALJ had inquired, Plaintiff would have explained that her belligerent encounter with the attending physician was not caused by "drug abuse," but rather her "inability to self-regulate her emotions combined with her self-induced withdrawal from alprazolam." (Docket No. 20 at 8.) However, it is the claimant's burden to prove her entitlement to benefits, *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994), and therefore her obligation to provide greater context to any medical evidence she believed warranted such explanation. Notably, the ALJ specifically asked counsel for Plaintiff during the administrative hearing whether he had reviewed all the exhibits in the record, whether the record was complete, and whether he wished to lodge any objections to the exhibits therein, to which counsel responded, respectively, that he had reviewed all the exhibits, the record was complete, and that he had no objections to the exhibits. (AR 246-47.)

Regardless, the March 2019 note appears to be consistent with other evidence in the administrative record. For example, Plaintiff's aggression during the emergency room encounter tracks her behavior six months later when she called a Social Security receptionist and threatened to come to her office and "kill the Administrative Law Judge and anyone else [she] saw." (AR 575.) A note from December 14, 2018 describes Plaintiff as "becom[ing] increasingly belligerent and demanding" in her requests for various pain medications. (AR 847.) The Court also notes that despite Plaintiff's testimony that she has never used any illicit substances (AR 279), she has tested positive for THC on multiple occasions. (AR 56, 846, 939.) The ALJ cannot now be faulted for failing to cast suspicion on the attending physician's notations, and, even if further explanation for the unflattering entries had been provided, the ALJ supplied

11

numerous reasons for discounting Plaintiff's credibility, which precludes reversal of her findings. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) ("If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.").

Plaintiff's secondary argument that the ALJ erred by failing to adhere to instructions set forth in POMS is similarly unpersuasive. First, Plaintiff does not explain how the ALJ's purported disregard for POMS necessitates reversal of the Commissioner's decision. Plaintiff instead miscites a case in which an ALJ violated the Commissioner's own regulations by finding that drug addiction represented a contributing factor to the subject claimant's disability without first determining that the claimant was disabled. *See Williams v. Barnhart*, 338 F. Supp. 2d 849, 862 (M.D. Tenn. 2004). Because the ALJ in the instant matter concluded that Plaintiff was *not* disabled, she was under no obligation to consider whether drug abuse was a contributing factor to any disabling condition.

Second, POMS is simply a "policy and procedure manual" that "does not have the force and effect of law." *Davis v. Sec'y of Health & Hum. Servs.*, 867 F.2d 336, 340 (6th Cir. 1989). Thus, a failure to comply with POMS or any of its guidelines "is not a basis for reversing an ALJ's decision." *Paxton v. Comm'r of Soc. Sec.*, No. 2:19-cv-1450, 2020 WL 4669887, at *3 (S.D. Ohio Aug. 12, 2020). The regulation that guides the Commissioner's analysis of drug addiction – which is at the heart of the *Williams* case but referenced nowhere in Plaintiff's brief – states only that when determining whether drug addiction is a "contributing factor material" to a finding of disability, the ALJ must consider whether the claimant would be disabled if she stopped using drugs. 20 C.F.R. § 404.1535(b)(1). As previously noted, the ALJ did not initiate an analysis under 20 C.F.R. § 404.1535 because she concluded that Plaintiff was not disabled. This

does not constitute reversible error. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 380 (6th Cir. 2013) ("Substance abuse is not considered until the Commissioner first makes a finding that a claimant is disabled.").

Plaintiff's assertion that the ALJ overly emphasized evidence of drug use in the record may be attributable to the ALJ's reliance on the specific description used by the attending physician in the March 2019 encounter, which states that Plaintiff "has chronic risks from substance abuse" and "has pending DUI / possession charges pending and was not forthcoming about the extent of her substance use with this provider." (AR 1029, 1032-33.) The ALJ borrowed this language when discussing the note in her opinion: "[T]he record documents evidence of substance abuse … that the claimant has not been forthcoming in disclosing to treating health providers [sic][.]" (AR 236.) But this portion of the opinion is part of the ALJ's lengthy analysis of the consistency of Plaintiff's allegations, as evidenced by the preceding paragraph's appropriate focus on Plaintiff's lack of significant treatment and the effectiveness of her medication, *see White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("A reasonable mind might therefore find that the lack of treatment during the [relevant] time frame indicated an alleviation of [the claimant's] symptoms."); *Workman v. Comm'r of Soc. Sec.,* 105 F. App'x 794, 800 n.3 (6th Cir. 2004) ("The ALJ is permitted to consider the effectiveness of medication used to control pain and other symptoms associated with a claimant's impairments."), and the subsequent paragraph's discussion of Plaintiff's decision to stop taking medication altogether. *See Ranellucci v. Astrue*, No. 3:11-cv-0640, 2012 WL 4484922, at *11 (M.D. Tenn. Sept. 27, 2012) (holding that the ALJ "could properly use Plaintiff's non-compliance with treatment as a factor in analyzing Plaintiff's credibility"). There is no indication that the ALJ's use of the term "substance abuse" in this context is anything more than a perhaps ill-considered

13

attempt to paraphrase the attending physician's notation, and certainly nothing to suggest that Plaintiff's use of substances – both illicit and prescribed – polluted the rest of the ALJ's five-step evaluation. *Cf. Williams*, 338 F. Supp. 2d at 863 (holding that the ALJ erroneously undertook the five-step evaluation "without segregating out any effects that might be due to substance use disorders"). Therefore, to the extent that the ALJ inaccurately described Plaintiff as suffering from "substance abuse," that error is harmless and does not negate the substantial evidence cited by the ALJ to support her credibility finding.

Finally, the Court addresses a section of Plaintiff's brief entitled, "Other incidents in this case illustrate [Plaintiff's] problems with emotion self-regulation." (Docket No. 20 at 11.) The Court is certainly sympathetic to the plight of individuals with emotional problems and understands the difficulty such individuals experience when applying for disability benefits. However, Plaintiff's suggestion that the ALJ committed reversible error by failing to discuss the Commissioner's decision to ban her from any Social Security facilities after she threatened various employees has no legal support. The ALJ clearly acknowledged Plaintiff's emotional condition, most notably by concluding that post-traumatic stress disorder represents a "severe" impairment. (AR 231.) Additionally, and despite Plaintiff's assertion otherwise, the ALJ explicitly referenced the steps taken by Plaintiff's previous employer to accommodate "her mental conditions" in her analysis. (AR 236.) Plaintiff thus fails to identify any error that necessitates reversal of the ALJ's decision.

A reviewing court is required to give extreme deference to an ALJ's findings regarding the consistency of a claimant's allegations of disabling symptoms. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016) ("[I]n practice ALJ credibility findings have become essentially unchallengeable[.]") (internal citation and quotations omitted). The

administrative opinion includes significant and detailed support for the ALJ's determination that Plaintiff's allegations were not entirely consistent with the evidence of record, and Plaintiff has not identified any error that warrants reversal. Accordingly, this assertion of error is rejected.

### 2. The Treating Psychologist Opinion.

Plaintiff next argues that the ALJ improperly rejected the opinion of her treating psychologist, Landrew Sevel. (Docket No. 20 at 10.)[5] On November 5, 2018, Dr. Sevel completed a form entitled "treating source mental demands of employment questionnaire" in which he opined – in response to "yes" or "no" prompts – that Plaintiff was "substantially impaired" in various categories of mental functioning that included, among others, "the ability to tolerate stress typically associated with employment in a competitive environment," "the ability to maintain concentration and attention for extended periods," and "the ability to respond appropriately to changes in a work routine or work setting." (AR 579-80.) The form does not define the term "substantially impaired" but instead quotes the following excerpt from POMS: "[A]n individual has a substantial loss of ability to perform a basic mental activity when he/she cannot perform the particular activity in regular, competitive employment but, at best, could do so only in a sheltered work setting where special considerations and attention are provided." (AR 579.) The ALJ indicated that she did not find the opinion persuasive. (AR 237.)

Applications for disability benefits filed prior to March 27, 2017 are subject to the so-called "treating physician rule," which requires that an ALJ give controlling weight to a treating physician's opinion if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §  404.1527(c)(2). However, the Commissioner has replaced this

---

[5] Plaintiff misidentifies this individual as "Landon Savel" in her brief.

standard with a different framework for evaluating medical opinions in claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Because Plaintiff filed her application for benefits after March 27, 2017 (AR 326), the ALJ evaluated Dr. Sevel's opinion under the new regulation.

Under this new regulation, the ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including those from a treating provider. 20 C.F.R. § 404.1520c(a). The ALJ is instead directed to consider the "persuasiveness" of the medical opinions based on five categories that include "supportability," "consistency," "relationship with the claimant," "specialization," and "other factors" such as the medical source's "familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.* §§ 404.1520c(a)-(c). The regulation makes clear that the two most important factors are supportability and consistency. *Id.* § 404.1520c(a).

According to Plaintiff, the ALJ erroneously discounted Dr. Sevel's opinion for three reasons. First, the ALJ found the opinion to be irrelevant because it is dated November 5, 2017, which is several months prior to the alleged onset of Plaintiff's disability on March 8, 2018. (AR 231, 580.) Second, the ALJ found that the opinion was inconsistent with medical evidence indicating that Plaintiff's mental impairments have not been "severely limiting for a 12 consecutive month period." (AR 237.) Finally, the ALJ cited the March 2019 emergency room encounter during which the attending physician noted that Plaintiff's mental processes "did not necessitate inpatient psychiatric care" (AR 237, 1033), ostensibly as support that Plaintiff's symptoms were not severe enough to be considered disabling.

Plaintiff first contends that Dr. Sevel's form opinion was actually completed on November 5, *2018*, which falls within the relevant timeframe for consideration. The record

16

confirms that Plaintiff presented the form to Dr. Sevel on October 31, 2018 (AR 1002), which suggests that Dr. Sevel completed the form in 2018 despite misdating it. Defendant also concedes that the form was completed in November 2018, which indisputably renders it relevant opinion evidence. (Docket No. 25 at 13.)

The ALJ's second reason for discounting Dr. Sevel's opinion – that the "evidence does not demonstrate that the claimant's mental impairments have been severely limiting for a 12 consecutive month period" – is a somewhat ambiguous statement that appears to invoke the 12-month duration requirement of 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."), which is generally used at step two of the five-step evaluation. *See* 20 C.F.R. § 404.1520(a)(4)(ii) ("If you do not have a severe medically determinable … mental impairment that meets the duration requirement in § 404.1509 … we will find that you are not disabled."). The Court reiterates the ALJ's conclusion at step two that post-traumatic stress disorder represents a "severe" impairment (AR 231), which at a minimum suggests that this particular mental impairment has "significantly limit[ed] [Plaintiff's] … mental ability to do basic work activities" for a 12-month period. 20 C.F.R. § 404.1520(c).

Nonetheless, disability is determined not by the diagnosis of a condition but by the specific functional limitations caused by the condition, *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014), and the ALJ discussed evidence suggesting that Plaintiff's mental impairments were not "severely limiting" earlier in the opinion. Most notably, the ALJ highlighted earlier in the opinion the "routinely" documented normal findings with respect to Plaintiff's memory, attention span, and ability to concentrate, in addition to medical records reflecting "normal psychomotor activity." (AR 235.) The ALJ also detailed a "Social Security

17

Administration Field Office personnel" interview during which Plaintiff exhibited no signs of significant mental limitations. (AR 232.) Such evidence weighs against the supportability and consistency of Dr. Sevel's opinion that Plaintiff is substantially impaired in her ability to maintain concentration and attention, perform at a consistent pace, and sustain an ordinary routine. (AR 579.) The ALJ was not required to replicate this analysis when discussing Dr. Sevel's findings later in the opinion. *See Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion.")

The ALJ's final reason for discounting Dr. Sevel's opinion – according to Plaintiff – emphasizes the absence of any mental symptoms during the March 2019 encounter that would warrant inpatient psychiatric care. It is unclear how this notation conflicts with any opinion contained in the form completed by Dr. Sevel, and a closer reading of the March 2019 note reveals that while "the patient does not currently necessitate further *acute* inpatient psychiatric care …" (AR 1033) (emphasis added), Plaintiff was in fact "offered a voluntary inpatient psychiatric admission, given the degree of her distress …" during the same encounter. (AR 1029.)

Nevertheless, such flawed reasoning does not invalidate the ALJ's discussion of the mental findings that undermine Dr. Sevel's opinion and speak to the paramount factors of supportability and consistency, which provides substantial evidence for the ALJ's ultimate decision. *See Hutchins v. Berryhill*, 376 F. Supp. 3d 775, 780-81 (E.D. Mich. 2019) ("[T]he fact that some evidence suggests impairment does not invite the court to reweigh the evidence and reach its own conclusion … [T]he ALJ's decision cannot be overturned if substantial evidence,

or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ.") (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)) (internal quotations omitted). Furthermore, the Court finds that any error in the ALJ's analysis of Dr. Sevel's opinion is harmless and therefore does not require reversal of the administrative decision. In support of this conclusion, the Court notes that even for claims that involve the opinion of a treating physician filed before March 27, 2017 – in which cases the ALJ is required to articulate "good reasons" for the weight accorded to a treating provider's opinion, 20 C.F.R. § 404.1527(c)(2) – an ALJ's failure to adequately explain the weight accorded to opinion evidence does not necessitate reversal if the opinion in question is "so patently deficient that the Commissioner could not possibly credit it[.]" *Wilson*, 378 F.3d at 547. The Court concludes that Dr. Sevel's opinion meets this "patently deficient" standard.

First, the Court emphasizes the Commissioner's particular procedures for evaluating a mental impairment, which require "rating" the degree of a claimant's functional limitations. *See* 20 C.F.R. § 404.1520a(c). This rating involves consideration of four functional areas: (1) the ability to understand, remember, or apply information; (2) the ability to interact with others; (3) the ability to concentrate, persist, or maintain pace; and (4) the ability to adapt or manage oneself. *Id*. § 404.1520a(c)(3). Importantly, the ALJ must rate the claimant's limitations in these four areas according to a five-point scale: "none," "mild," "moderate," "marked," and "extreme." *Id*. § 404.1520a(c)(4). A finding of "extreme" denotes a limitation that is "incompatible with the ability to do any gainful activity." *Id*.

The form completed by Dr. Sevel calls for the respondent to simply check "yes" or "no" to indicate whether a claimant is "substantially impaired" in 14 different measurements of mental capacity. (AR 579.) This binary system therefore offers little insight regarding Plaintiff's

19

functionality pursuant to the five-point system delineated in 20 C.F.R. § 404.1520a. The severity of Dr. Sevel's opinion – which concludes that Plaintiff is mentally unable to perform numerous basic work activities – is also inconsistent with the other medical opinions in the record, which bolsters the ALJ's decision to discount it. *See* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be.").

Additionally, Dr. Sevel's form opinion is entirely conclusory with no explanation for any of his "substantial impairment" findings. There is no narrative discussion, nor any reference to clinical findings or office notes that might provide support for his conclusions. The form fails to even identify the diagnoses or conditions that allegedly produce the substantial impairments preventing Plaintiff from gainful employment. Such omissions weigh heavily against the supportability of the opinion. *See id.* § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions or prior administrative medical finding(s) will be.").

Because the form instead consists only of check-marks that do not comport with the criteria identified in 20 C.F.R. § 404.1520a, the opinion is "weak evidence at best" that does not necessitate reversal of the ALJ's ultimate decision. *Hernandez*, 644 F. App'x at 474. *See also Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 441 (6th Cir. 2017) (holding that a "conclusory opinion[] which provided no supporting findings or records and consisted largely of one word answers, circles, and check-marks" met the patently deficient standard). Remanding the case to the ALJ for additional consideration of an opinion so lacking would represent "an idle

and useless formality" that the Court declines to facilitate. *NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 766 n.6 (1969). The Court therefore rejects this assertion of error.

## V. RECOMMENDATION

Based on the foregoing analysis, it is respectfully RECOMMENDED that Plaintiff's motion for judgment on the administrative record (Docket No. 19) be DENIED and the Commissioner's decision be AFFIRMED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge